Case number 24-5127, Washington Lawyers' Committee for Civil Rights and Urban Affairs, At-Balance v. United States Department of Justice. Mr. Stafford for the At-Balance and Ms. Bolham for the Acknowledgement. Good morning, Mr. Stafford. You may proceed when you're ready. Thank you, Your Honor, and may it please the Court. As the District Court recognized in this case, WLC stated a valid policy or practice claim under FOIA against BOP. BOP's FOIA violations are pervasive. Requests channeled through BOP's general FOIA pipeline, including requests on behalf of inmates merely seeking their own prison record, go unanswered for months or years, way beyond the time permitted under FOIA. This pattern of violating FOIA's timing mandates is especially harmful for prisoners seeking to vindicate their constitutional rights or hold prison officials accountable for abuse. Despite finding that WLC stated a valid claim, the District Court immediately granted summary judgment to BOP. without any discovery, based on a single affidavit from a BOP official. But the affidavit only raised more questions than answers, as it confirmed that BOP is capable of adjusting its channeling policy to comply with FOIA's deadlines for certain individual requests when it wants to. The District Court's grant of summary judgment should be reversed in this case. I'd like to start with the correct framework for analysis in this case, because I think the parties have some dispute about that. In our view, the correct analysis comes from this Court's Judicial Watch, and the question is whether the agency has a policy or practice that results in persistent FOIA violations and will interfere with WLC's rights in the future. If so, the agency has a burden to, number one, explain its delay, but number two, also confirm how it intends in the future to conform to FOIA's mandates. So in this case, the evidence shows that BOP has a policy of unnecessarily and selectively funneling requests for individual records behind requests for systemic records, which create massive delays. Can I just back up and ask about what you think the legal test is? So effectively, the government and the District Court proceeded as if it's enough if the agency shows it's addressing requests in good faith. And I just want to make sure I understand your argument. Are you arguing, as a legal matter, that that's not the right test? Or are you just arguing, as a factual matter, because of the channeling policy and, I think, the arguments you were about to get into, that there's doubt about agency good faith here? I'm arguing the former, Your Honor, that that's not the correct legal test. The good faith language is coming from this Court's decision in Open America, which, as we explained in our reply brief, is a case interpreting the exceptional circumstances provision of FOIA, and BOP did not invoke that exception in this case. It didn't raise it in the District Court. So when we ask, when we ask, is the government's explanation adequate under the statute? What is the metric? What's the statutory standard we're measuring that against? So you're looking to see whether the government has explained the delay, but also, in a policy or practice case, you're looking to see whether the government has adjusted its policies so that it can conform to FOIA's mandates in the future. So we don't think there's any... I think that's the question. What does it mean to comply with FOIA's mandates in the future? One test, which you seem to have avoided, would be they have to show they're satisfying the exceptional circumstances standard. That's the standard the statute provides for justifying a lengthy delay in production, but you haven't offered that as the test. And you've said words like bring into compliance with the statute, and I just want to know which provision, which provision is being violated, which provision do they have to explain they're going to comply with? Yeah, so they're violating the timing mandates in A3a and A6a. And, you know, the language I'm using is the language that the court used in Judicial Watch. I think the court does talk about the exceptional circumstances provision, but the reason we're not really invoking that is because that's typically used for individual records requests, where the agency will have sort of a more specified reason for the delay with respect to an individual record. In our case, we're really focused on the policy or practice, and we're looking for sort of a broader injunction that would have the agency modify the practice itself. A6a is about the timing for the determination. Correct. So your suit is about forcing POP to make determinations, not produce the records? Correct, Your Honor, because I mean we're looking for both. We're looking for the determination and the production. They haven't done either, but what happens is whenever my client sends a request to POP, we get a tracking number, and then we get sort of nothing in response for months or years. So we're looking, you know, both to the determination requirement and also the production requirement, which I think this court's recognized as, you know, promptly means days or weeks, not months or years. Mr. Stafford, what distinguishes the circumstances that we're facing here from that of every other agency that has a FOIA backlog? If we were to rule in your favor, does that mean that every routine FOIA requester who's, you know, repeatedly coming back to the agency for a similar category of records and who routinely has to wait more than 20 days to hear about the request, is every person in that situation, by making those allegations, going to be entitled to discovery and potentially an injunction based on allegations that the agency should be using an alternative expedited or non-FOIA process to release the records? I think in this case, Your Honor, it's a little bit unique in that we actually have record evidence showing that the agency is capable of using these alternative procedures. I mean, have this streamlining process for individual medical records requests that they have sort of developed over the course of this litigation. And in our view, this sort of shows that the agency, you know, unlike most agencies where perhaps they are constrained by, you know, they are going as fast as they can, you know, this case is just different because of the fact that we have the evidence showing that they can go faster when they want to. And in that circumstance, we think that, you know, we should at least get discovery into the extent of that policy and, you know, to limit it to individual medical records and how the agency can sort of allocate its resources appropriately. I'm still confused by your claim that the FOIA violation is the channeling policy by which I take you to mean the policy of requiring the requesters to go through FOIA. And it just seems perplexing to me that the notion that requiring FOIA is a violation of FOIA and that the remedy under FOIA should be to use some different policy. And I take you to be referring to a Privacy Act policy? Yes. So, Your Honor, I'm happy to clarify that. So, I mean, all of the FOIA, all of the requests for records have to go through FOIA under BOP regulations. So, what they've done is they've created a streamlined process that allows for more expedited processing of certain individual medical records. And we're simply saying that by doing that, BOP has shown that they are capable of processing individual records requests faster than they are currently doing. And we would just like to, you know, get evidence. Is the way that they fast-tracked those medical records requests, isn't it by cutting back on the Privacy Act exemption? I think that's right. They're not going to process it through FOIA at all, right? I mean, I think by regulation, they technically have to process it through FOIA. I think my understanding is that they're just doing different levels of different, less rigorous layers of review for the particular records, which enables them to produce them faster. And I think a lot of it has to do with the What are the material facts that you cannot supply that you need to conduct discovery to? Yeah, so we would want facts into this channeling policy decision that they've made, sort of their analysis of how they're able to allocate resources in a way that allows them to process these particular individual requests faster than others. We would want discovery into that, you know, their declaration talks a lot about improvements that they've made through centralization and training. We would want discovery into exactly how that's affecting the backlog and how that's going to help sort of my client get records faster in the future. And, you know, we would also want discovery into their assertions about their resource constraints. In a nutshell, is the idea that you wanted to get evidence indicating that they're capable of complying with the time limits? Is that the whole idea? Yes, we would want evidence to support our argument that they are capable. And the district judge, did the district judge say you don't need that evidence, or was it solely on the basis of you haven't shown bad faith? Our understanding is that the district judge said that we haven't shown bad faith. And so, even though, I mean, I think we were not entitled to discover. Correct. And I think the district court recognized that, you know, this discovery would give us more information into these various aspects, but because we haven't shown agency bad faith, we're not entitled to it. The irony is that everything you seek in discovery could be turned over under FOIA. I think that's right. I mean, again, we would then be forced to wait for months or years to get that. So, you know, we don't think that's a viable alternative. As I understand your position, it is that this bad faith idea, which you cannot get out of Rule 56D, you can read it until you're blue in the face and you won't find it. And it's not anything that is, so far as I understand, anything that's required in any other area other than FOIA, but it only applies to searches. It doesn't apply to a policy type lawsuit. That's correct. This court's never applied it to a policy or practice claim. And, you know, it's only applied it in the inadequate search context and also in the inadequate exemption context. I suppose that's another way of saying in every FOIA case. Every FOIA case of this court's just talked about the discovery obligation. Yes, that's correct. But again, you know, we just one more question about this. I think you might have some sort of good fairness arguments, but I was concerned, seemed to me that in your brief to the district court, you know, it sparked my curiosity. The district court didn't address an argument that it should be some standard other than bad faith for discovery. And in your brief below, it seemed that you accepted that standard and the district court said you concede that the bad faith standard applies. Is that, can you address that? It suggests that you waived this argument. Yeah, I mean, I think we were sort of going off of what BOP's argument was. I don't know that we, you know, contested it so much, but I think our main point in the district court was that whatever the standard is, you know, in this kind of context where you have evidence of sort of a specific policy or practice, you should get discovery. And, you know, we've, we've looked at that and we don't think that the bad faith requirements should apply sort of in this narrow type of context where you have an agency that is violating the statute persistently. And the only question is, you know, how are you going to remedy that? In that sort of context, we think discovery is appropriate. You're acknowledging that if this case concerned only a single delayed FOIA request that you would not be entitled to discovery. If we only had one request, then we may not be able to show that BOP has a policy. Is that? Well, no, I mean, I'm partly probing the basis of your making a distinction between entitlement to discovery in an individual case and entitlement to discovery in a policy or practice case. And so if you had the same situation of delay, but an individual case, I just want to get what the ground rules are. From your perspective, you would not be entitled to discovery. I think we would be entitled to discovery depending on sort of the nature of the violation and what and how the discovery could, whether it could satisfy the normal requirements of 56D. You'll have to explain more what you're thinking. I don't follow what that means. Okay. More concretely. Sure. So, so, you know, in our case, we think because there's this persistent pattern of violations, we think that we should get discovery and BOP is not sort of harbors in the inadequate search context. In the case of individual violation, I. Pattern tends to show lack of good faith or because it's somehow differently or not relevant or. Yeah. So, I mean, our understanding of this sort of bad faith requirement, again, I do want to emphasize that this isn't really in the rules or anything. This is something that the court's developed. And our understanding is that this is really grounded in sort of the normal presumption of regularity that the government gets in all sorts of contexts. And that presumption doesn't really apply here because the agency is already violating the timing mandates over and over again. And the other context, the agency is presumptively complying with the statute by conducting the search or invoking an exemption. And the only question is whether the affidavit confirms that. So there's no discovery necessary. So back to your, the way you're characterizing the violation. Basically, you're saying that it's been shown that the Bureau can process prisoner requests, prisoner information requests more quickly because it's doing that for medical records. But isn't it the case that it's that the Bureau under the Privacy Act has promulgated regulations saying that the prisoners are not entitled, that the people aren't that you're seeking? My understanding of the Privacy Act regulations is that they just say that you're not automatically entitled to them. You still have to go through FOIA to obtain them. And so the only question is, once you're in the realm of filing a FOIA request, how quickly can BOP process it and whether it can comply with the statutory requirements. So your fundamental argument is they're processing one category documents quickly and they should process ours quickly too. But it seems like the question should be, is there anything that suggests that your request should be prioritized over all the others in the FOIA queue? And can you point to anything that would suggest that? I mean, it seems like any FOIA requester would come in and say, you're doing those fast. You should do mine fast too. Why should yours skip the line? I don't know that it's necessarily skipping the line. I think it's more of a streamlined process as I understand it, because BOP still says that it has this first in and first out policy for all FOIA requests. Our understanding is that for certain individual records, they just don't go through the same multiple layers of FOIA attorney. It's actually, I could be wrong, but I think the setup is quite clear and it's all based on regulations. The Privacy Act, there's an exemption and then a separate regulation says all even individual records will be processed through FOIA. Now they've posted a notice that withdraws that Privacy Act exemption for one specific category exemption. So your claim would make sense if you had sort of a legal argument that it was arbitrary and capricious just to have that one type of exemption. Or maybe if you had initiated a petition for rulemaking, but this is fundamentally, you're asking us to invalidate regulations and order them to expand a Privacy Act exemption or to expand their multi-track processing regulations, which they also have authority to do and which are in place. But that's just not the way this case has been litigated. And it seems like a, I guess I'm concerned that it's a collateral attack on promulgated regulations and you haven't sort of mounted a direct attack. Yeah, I understand the point. My submission is that the regulations themselves really aren't legally problematic. The problem is whenever you have these FOIA statutory requirements, the regulations prohibit the agency from complying with them. So to the extent that the violation is sort of, or to the extent we need to identify a legal violation, it's the agency's failure to comply with FOIA. The analogy that you're drawing between the medical records and the other prisoner records seems to me to run aground on the shoals that Judge Garcia has just identified, that basically you're asking us to invalidate the extent to which the Privacy Act regulations continue to apply to the non-medical prisoner records. And that just seems to me to be not a FOIA claim, but a Privacy Act claim in FOIA clothing. And it just, it feels very indirect and it isn't contending as Judge Garcia's question is indicating with whether that choice to leave the Privacy Act regulation intact with respect to non-medical individual records is in any way ungrounded or unlawful. Yeah, so in the judicial watch case, for example, the court pointed out that the agency conduct can be formal or informal. And so we don't think, for example, if the agency had a policy of selectively choosing which individual records, if it codified that policy in some regulation, we don't know that that would really change the analysis. And we don't think that the agency should be able to sort of abuse their ability to promulgate regulations in a way that allows them to escape FOIA's timing requirements. So, you know, all of this is to say that I do think that it's the interaction of these regulations with FOIA's timing mandates that is creating the problem. And so that's why we brought this case under FOIA, because it's FOIA that imposes these requirements. So if the case were to proceed to discovery, what additional information about the Bureau's FOIA processing do you think would be, you'd be entitled to and what would be dispositive of the policy practice claim? So we would want information about this, their decision to selectively streamline certain individual records requests, how they're able to allocate their resources to accommodate that, and whether they're able to allocate resources to accommodate other streamlining for other improvements, their centralization and their training. We would want to understand exactly how that's helping them achieve, you know, any sort of progress with respect to their backlog. And we would also want to understand exactly how the resources are allocated and, you know, what is going on in the agency that, I mean, you know, and I'll point to an example in the affidavit, it shows that their FOIA staff has dropped tremendously in recent years. We would want to understand exactly what's going on with that and whether the Bureau is just shifting resources away from FOIA to other parts of the agency or, you know, how is it, how is it that this, you know, that the resources are being allocated. The only thing that you would be entitled to in discovery is what's set forth in the affidavit on page 135 to 136 of the appendix. That's rule 56d says that the scope of the affidavit defines the scope of the discovery and the district court has control of it. That's correct, yes. I mean, we think our affidavit, you know, it is broad. That's correct, and we think it's broad enough to sort of encapsulate everything that I've. It's fairly broad. Yes. Which is why I said the district court can control the scope and cabin, the amount of discovery, but can't do that under rule 26. This is rule 56d, it's different. That's correct, and we think, you know, to the extent there are concerns about the breadth or anything, we would, you know, be happy to work with the government on targeted discovery, you know, just focusing on certain documents, certain areas, and, you know, this isn't unusual. I can point, I mean, Judge McFadden had a similar case right after this court decided Judicial Watch where he denied a motion for summary judgment based on an affidavit very similar to this one, and then the parties proceeded to some very targeted discovery about the agency's budget, about the agency's streamlining processes, and that ultimately resulted in a settlement, which, you know, would be a possible outcome in this case as well. If the case were to proceed to sort of a final injunctive court, what would you envision that looking like? Is it just sort of an injunction to make best efforts to come into compliance with the 20-day time limit and then the promptness requirement, something else? Yeah, I mean, I don't want to invade the question. Some of that will depend on what we are able to obtain in discovery. So, you know, to the extent BOP wants to try to, you know, explain to the court why it can't perfectly comply with the 20-day rule, you know, we would think that the court could take that into account in sort of its equitable decision and issue an injunction that requires BOP to adjust its policies as best it can to comply with FOIA's mandates. And again, you know, the specifics of that would depend on the information where it would get a discovery about, you know, what's going on at BOP. And my earlier question was, what standard do we judge their explanation against? And if we assume they had shown, in good faith, we're trying to make determinations within 20 days, and we're trying to make prompt reductions, but here's the challenges we face. And that explanation all held together. Is that sufficient? Is that the question we're supposed to ask about their explanation? Yeah, I mean, my understanding from the explanation language, and this isn't really fleshed out in the judicial watch case as to what would constitute that. I mean, my understanding is that it would be a test that asks, are they doing it as fast as possible? And is there anything they can do to process the requests faster? You know, or alternatively, are they employing sort of unnecessary policies that are increasing the delays and, you know, causing greater statutory noncompliance? That test, are they doing it as fast as possible? I have to say, I do not relish the judge who would have to manage deciding, applying that test. It just seems so intrusive of the agency's operations. And I understand where you're coming from, but it just seems like you're going to swing the door wide open to a lot of judicial supervision of FOIA processes. And I'm just not sure the courts are going to be up to that and be able to do that in a consistent way if the standard you've just articulated is all the guidance that you can provide. Yeah, I mean, you know, I do think that the courts are sort of applying the standard in the exceptional circumstances context with respect to individual records requests. They are able to sort of look at the agency's affidavits and sort of, in those cases, what they'll do is they'll establish a timeline based on their understanding of the agency's processes. And, you know, oftentimes the courts will evaluate the agency policies and look to see whether they're necessary and whether the agency can overcome them. But the exceptional circumstances is sort of geared toward one request in a context that is accepted to be sort of stable, whereas you're saying, can they rejigger their process to deal with us faster, whereas the agency has to think about its entire FOIA load. So it's, again, this gets back to a question that one of my colleagues was asking about is how is it that you're not asking for queue jumping and then we'll just have sort of whack-a-mole cases. Oh, now you want to be at the head of the line. No, you do. No, you do. No, you do. And so I take your, I mean, previously when I asked you a related question, you said, well, here it's different because we have a more specific shortcoming that we're identifying. And I guess I'd like to hear again your articulation of, you know, the policy that you're challenging. It's, I take it, it is not just that there's a failure to meet the, a widespread ongoing failure to meet the statutory deadlines. It's something more. Can you? Yeah. So it's, it's their decision to selectively streamline certain individual records requests that they want and not, you know, streamlining others. And therefore, for those other ones, they are violating FOIA's statutory deadlines. And when you say streamline, what do you mean? Because sometimes you use the term expedited, which has to me, this sort of cue jumping quality. What are they doing now that is inadequately streamlined? And to the extent that you know, what are they doing with the medical records that would equal, and why would that equally apply to these other records? Yeah. And I think this is something, again, we would want to explore this in discovery to figure out exactly how they're able, but the, the, the Delta between sort of the processing time for individual medical records requests and non-medical records requests is so large. We would just want to understand exactly how they're able to process those medical records faster and why the, the, you know, that faster processing time shouldn't also apply to our individual records requests for non-medical records. And the medical records, they don't have content that has to be removed in order for them to be released. I think they do. You know, it'll be, they'll have to go through certain, certain protocols for redactions. Again, this is, you know, something that we would want to explore and discovery the extent to which they, they need to review for redactions and other types of information and, and the extent. You've been making those requests, so you're familiar with that process too, right? Yes. The medical records request. And on the other records, has, have you ever, are you familiar with any of those records that have been produced? I mean, we can ask the Bureau this also, but are there different kinds of redactions, more redactions, more categories of redactions? Yeah. My understanding is that in some of the disciplinary ones, there may be other sort of redactions in terms of other inmates that, you know, may have privacy issues. But again, you know, it's just something that this hasn't really been fleshed out. And so we would want, you know, more. And medical records, I had understood from your brief that they were being produced under the Privacy Act. Is that wrong? Yeah. My understanding is that they're, they're, they still have to go through FOIA and this is something, you know, maybe I'm misunderstanding, but, and this is something that's sort of changed over the course of this litigation. So, you know, to the extent that the court wants to remand for, for the, for the Bureau to actually explain it. My understanding is that all of the records requests by attorneys still have to go through this FOIA process. They just have sort of a separate sort of tracks, streamlined track for these individual medical records requests. So when your briefing talks about part of the problem is they're being channeled under FOIA and they should be taken out of FOIA processing. Are you amending that here and saying, no, what we're seeking is FOIA processing. It's just FOIA processing more like the medical records. Yeah. Yeah. And, and, and, you know, I, I'm happy to clarify that here. I think our, our position is that whenever we say they're processing through, through FOIA, they're processing them through the single FOIA pipeline that also applies to these, you know, large systemic records requests. And, you know, often that means that an inmate's personal record requests will just get behind these large, these large requests and, and resulting delays of months or years. We just don't know. And we, we, you know, our, our position is that that's not necessary. And we would want to, you know, explore that in discovery and figure out exactly how the Bureau can amend its policies to comply with FOIA. Can I, which is one last question on the legal test, to use, use the words as fast as possible. And I understand why I think that's language and judicial watch, but if we were just approaching this fresh, I think you would want a test that's drawn from the words in the actual statute. And when I read the statute, the timeliness requirement for production, not the determination production is prompt unless there's exceptional circumstances. So reasonable way to do this would be to ask if they're not doing it promptly, which you've alleged, have they shown exceptional circumstances? And I just, why wouldn't that be the statutory framework for this kind of claim? Yeah. I mean, we still win. I'm just, yeah, we would be happy with that. I mean, I think judicial watch does have a lot of language that says the question is whether the agency's adjusted its policies to make prompt determinations or to prank prompt productions following its determinations. Just didn't have to reach this question, right? It was correct. That's fleeting. And this case is what is the statutory standard for judging the agency's explanation? That's right. And, you know, we would be happy with a standard that says, you know, the agency has to have policies that result in prompt production. And if not, it needs to satisfy the exceptional circumstances requirement. Again, they haven't tried to satisfy that here. We don't think that should be a reason for affirming or anything. So my understanding is that the Bureau does differentiate between, you know, simple, medium and complex, and it has different hues and then it processes those first in first out. And so to some extent, it sounds like your claim is a challenge to the notion that these prisoner files should be processed under the complex hue. Is that accurate? I mean, you know, they do have sort of this dual track where they have a simple processing, very limited, you know, that doesn't constitute very much of the records requests. It's normally, you know, agency documents that are already online. And it certainly doesn't accommodate any requests from institutions themselves. That's sort of all lumped into the complex pipeline. And all of my clients' requests have been deemed complex, whether they're individual records requests or more systemic. So, you know, they do have this alternative track. We don't know that the denomination should really, you know, matter that much. Even if it's processed in a complex track, we do still think that they're, you know, the question is whether they're able to comply with FOIA. And here we think that they are in certain circumstances. That's helpful. But so would it be fair that you're wanting a simple track that's available to these records? One way of thinking about it conceptually is that I think the simple processing track should be possibly expanded. Yes. I mean, we think they should have sort of a streamlined track for certain individual records. And if that's sort of through their simple track, then that would be fine, depending on, you know, how they apply their simple track and how that works internally. But again, you know, the real question for us is just whether however they're denominating the practice or however they're denominating the request, are they complying with FOIA's mandates? So I gather that the Bureau has a process for allowing an inmate to access their central file. And there's a footnote in a brief about 28 CFR 513.40 and that they can actually go and look at it electronically or they can request copies of that file. And is that file one that encompasses medical disciplinary and educational information? The central file will encompass some of that. I think there's a separate provision for medical records. But both of those provisions are just allowing the inmate to access them. And I think, you know, there's several problems with it. The first one is that it's under supervision from BOP. You know, a lot of it's in discretion of BOP. So for example, if BOP doesn't want to give certain medical records that have subjective opinions of their medical professionals, they can withhold them and require the prisoner to file a FOIA request. So, you know, it's not really like a satisfactory process itself. And it certainly wouldn't apply to my client. When I file a FOIA request, presumably the same limitations, Privacy Act would apply. I guess I'm having trouble. I mean, there's a procedural difference between Privacy Act and FOIA. But substantively, the thing that troubles me is it seems like there's substantive decisions, substantive regulations, substantive exemptions under the Privacy Act that presumably would equally apply under FOIA. But in some of your articulations, it seems like you're arguing against that. It's really a substantive argument. No? I mean, I don't know if this is responsive. I mean, our understanding is that for the inmates accessing their own records, there are just certain limitations that the Bureau puts on them. And, you know, a lot of these are sort of more onerous than what FOIA would require. And so what happens is, yes, so for example, the Bureau can sort of limit the number of, of the documents that the inmate is able to view. And they have a lot of discretion in that regard. They have to make a request. And, you know, if you think about this in the context of an inmate trying to file a civil rights claim against the prison, I mean, it's tough to imagine that the prison is going to, in their discretion, make sure that the prisoner is able to view all of their documents, let alone keep them and then give them to their attorney. This wasn't brief, but I thought I saw in the regulations that one way a prisoner can get access is by reviewing it under the supervision of a BOP staff member, but that they also can request photocopies. I think they can request photocopies. I mean, you know, this also isn't in the record, but we have sort of in our, you know, we mentioned that the USP Thompson investigation that my client did a lot of work on. And in that context, you know, we had instances of BOP staff sort of confiscating files from prisoners' cells. And so, you know, that even though they're able to get copies, you know, it really wasn't satisfactory. And are their counsel not able to get copies? So the counsel, if the counsel wants to get copies, then they would need to go through the FOIA process under 28 CFR 513.63. 28 CFR 513.63. And that's FOIA or Privacy Act? That's FOIA, and it's requests by attorneys on behalf of inmates will be treated as inmate requests for their own records under FOIA. But there's a Privacy Act, or maybe it was a FOIA regulation that says the prisoner can get his own photocopies. Correct. Yeah, that's right. Privacy Act. My understanding is it's a FOIA.  But, you know, for my client, you know, it's the attorneys, and they do have to go through the FOIA process. All right. If there are no further questions, I'll wait for a rebuttal. Thank you. Good morning, Mr. Pullum. Good morning. Good morning, and may it please the Court, Thomas Pullum for the Bureau of Prisons. As this Court explained in Judicial Watch, the rule in this circuit is that an agency's compliance with FOIA depends on its good faith effort and due diligence in administering FOIA, and that, therefore, not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention. The uncontroverted evidence offered by the Bureau establishes the agency's good faith and due diligence, and that the agency's inability to process all requests within the statutory timelines does not reflect an abuse of FOIA's scheme or a total disregard of the agency's obligations. On the contrary, the Bureau provided a reasonable explanation for its processing practices and outlined many efforts it has made to improve its processing times. For this reason, the District Court properly granted summary judgment on the policy and practice claim to the Bureau, and because the agency's showing was sufficient to warrant summary judgment, and the Lawyers' Committee did not offer any evidence of agency bad faith or evidence that would otherwise undermine the agency's showing, the District Court did not abuse its discretion in denying discovery. And I'd like to start by responding to kind of two issues that were raised by counsel for the Lawyers' Committee. One goes to the nature of the process for access to the medical records of adults in custody. Counsel described it as a streamlined FOIA processing, but that's not what it is. This process is described in the Federal Register 89, Federal Register 49-906, and I think the way that Judges Pillard and Garcia described it is correct, is how we understand it, that what the agency was doing there is saying that we will waive an exemption under the Privacy Act, we're doing so as consistent with the Bureau's correctional interests, and allow access under the Privacy Act. Where records are not exempt under the Privacy Act, an individual has a statutory right to gain access to records about that individual, and they are not processed under FOIA. So this is not a streamlined FOIA processing, it's not a kind of a FOIA light, it's processing under the Privacy Act. So that was one point. The second point is I would just like to confirm our understanding, this is a point raised I believe by Judge Garcia, that the plaintiffs in the District Court did advocate for the same standard regarding discovery that we are, we have said applies here. This is at JA 114 and 115. First they said an agency may satisfy its burden on summary judgment on the basis of affidavits if they're reasonable, reasonably specific, and if they're not called into question by contrary evidence in the record or evidence of bad faith. That's the general FOIA standard for summary judgment. And then further down on JA 115, they acknowledged that discovery in FOIA cases is rare and is permitted when the court is, quote, assured that an agency's declarations are reasonably detailed, submitted in good faith, and the court is satisfied that no factual dispute remains, quoting Baker and Hostetler versus Department of Commerce. And that is a FOIA case involving the kind of mind-run FOIA case, as counsel describes it, not a policy and practice claim. So they specifically quoted standard FOIA standards for summary judgment and discovery. The District Court applied them, and that's why we think there was no abuse of discretion. And I'm happy to take any questions that the court has. Can I ask you my question about the legal test? So we've proceeded as if delays are justified, or at least, you know, don't warrant relief if the agency is acting in good faith to address the backlog. And my concern is the statute doesn't say that. The statute does say if there are exceptional circumstances and you're exercising due diligence, then a court won't order production immediately. And I'm struggling to understand why that wouldn't be a test. We would ask, even in a pattern or practice case, as the agency come forward, that in a way that shows we are facing exceptional circumstances and are exercising due diligence, not just the latter. Yeah, so I think the court answered this question in judicial watch when it said, in language I pointed to in my introduction, that it's long established in this circuit that an agency's compliance with FOIA depends on its good faith effort and due diligence. Here's the big problem with that language. It's quoting Open America, which was decades before the 1996 revisions to the exceptional circumstances definition. And at that time, courts had generally treated the exceptional circumstances exception exactly the way you're Congress stepped in and said, if you're dealing with a predictable agency backlog, you have to show you're making reasonable progress towards addressing that backlog. And that's just what's missing. That's the only thing that's missing from what judicial watch, which didn't have to address this question. The only holding there is there was an unexplained delay gets you just asked motion to dismiss. And so why that was quoting from the pre-1996 exceptional circumstances formulation. And I would just say, why not use the actual statutory standard now? Well, I don't think it was necessarily quoting from the standard, from the statute. It was saying that it agreed with how Open America had applied this. And this generally applied FOIA cases. Just that good faith and due diligence are the touchstones underlying the scheme generally is what judicial watch said. But if I could just make one additional point, which is that even if you wanted to look at the exceptional circumstances test, we think that would be satisfied here because the agency's declaration establishes that it is making a reasonable progress in reducing the backlog of its requests, which starts with kind of stopping the bleeding, which is what the agency is trying to do through all of these. What about the staffing issue? I mean, the context here isn't, it's certainly seemingly commendable efforts are being made, but the fundamental reality is that it seems like the number of requests is going down. Backlog is still going up. And the primary cause seems to be that your staffing levels have decreased dramatically. And we don't have an explanation of why that is or any efforts you've made to increase staffing levels. So I think there's, I would like to push back on the idea that the kind of only reason behind the backlog is staffing levels. Mr. Boehm pointed to the increasing number of complex requests so that even if the number of requests is slightly trending downwards, the number of complex requests, which take more time is trending upwards. And that the agency had went through a very difficult time during the pandemic where there were competing demands placed on FOIA staff, including things like providing, helping to provide vaccine cards to prisoners, providing information to family members about the status and health of their relatives who were in custody and providing medical records on an expedited basis through the informal process that was later formalized under the Privacy Act to allow lawyers to request home confinement or compassionate release. But even so, turning to the staffing, I mean, what the declaration notes that there was a general decrease in staffing levels for a time. I think it would be inconsistent with the presumption of regularity to assume that that was because the agency was selectively firing FOIA people and, you know, doing other things. And we've pointed in our brief to evidence that... You don't have to be, you know, nefarious. It's just you're not prioritizing FOIA responses. Maybe a statute with a promptness requirement in exceptional circumstances requires you to... Well, of course, I mean, the Bureau has to comply with many statutes and how the Bureau allocates resources from kind of a lump sum appropriation would be, you know, in the Bureau's discretion. But we pointed to evidence in our brief that the court can take judicial notice of that the Bureau is actively trying to hire people for specifically FOIA provisions. We pointed to postings for five different positions that were open at the time that we submitted the brief. So that's just really inconsistent with even if the court could entertain, you know, the speculation that the Bureau was acting in this way. I guess there's a little bit of a mismatch, though, or a kind of a black box in the Bureau's declaration given the more focused... I mean, if the claim were just a general delay claim, I could see the, you know, policy and practice of delay. I could see the Bureau's affidavit being quite responsive. It's commendable that there are separate tracks. It's commendable that the Bureau has created this more streamlined approach for certain of the Privacy Act-enforceable documents that they're not all left with the only access being a FOIA effort. But what the Lawyers Committee has argued here is that there's this cognate group of records, and they may be wrong that they're analogous, but they're saying that they're analogous. The disciplinary and educational records that are part of a prisoner's file, just as the medical information is part of a prisoner's file. And one of the questions is, why are the disciplinary educational records classified as complex? And we don't have an answer for that. So it's... I appreciate the opportunity to address this. What the Bureau has said is that requests for records that come from an individual institution, as opposed to kind of the main Bureau, will generally be on the complex track. The fact that there is this Privacy Act alternative for medical records has no bearing on the classification of a FOIA request as simple or complex. This is a totally separate procedure, and as I think some of Your Honor's questions indicated, I don't think it's really coherent to argue that the agency is engaged in a policy or practice of violating FOIA because it fails to make other processes outside of FOIA available for certain categories of requests. What the Bureau did was look at its Privacy Act exemption and said that, you know, generally we will be able to waive it for these categories of records because it won't be, you know, that won't compromise our Correctional Institute interests. And so those will be available under the Privacy Act. Now, of course, just because requests for records are generally records from an individual records from an institution are generally on the complex track doesn't mean they will always be. It depends how broad the request is. And there are certain types of records that can be more easily released. So if a request is narrowed to focus on those, the Bureau can actually move the request to the simple track. We cited some, I believe, a Bureau program statement in our brief that talks about the components of a central file and that there is a kind of releasable section of the records. So it really depends on what's being requested. A little bit more sense of what that might typically look like, what might be in that. I apologize. I don't have the program statement with me. If you hold on one minute, I can tell you the agency's kind of general practice when, so as part of its kind of continuing efforts to improve FOIA processing, the agency has a kind of general practice now when it gets these requests for individual records and they inform the requester that they can place the request on the simple track if it's narrowed to certain types of records. And the types of records that are often identified are medical records, mental health records, admissions or releases history, recidivism risk assessments, progress report or program review, work history, drug program history, custody classification, disciplinary history. These are all kind of identified by code. Where is that? That's not in the record. I'm just describing what they... Is that a public document? No, this is just what the agency is doing as a general practice now. This is all just to make the point that this is, it kind of depends on, as in any FOIA context, there's often a dialogue between the agency and the requester to try and get things narrowed and sped up as much as possible. I think one of the items that you read just now from the program statement is disciplinary history. Is that right? For a certain category of records, and I just don't, I apologize, I just don't know what's involved there. But I don't think that we need to get into this level of detail because on our reading of Judicial Watch, what the agency needs to do is establish its good faith effort and due diligence in responding to requests. And we think that the agency's declaration amply does that. If due diligence, I mean, just to push back on that a little bit, if due diligence and the reasonable progress that Congress, you know, explicated in amending the Act after Open America, if due diligence includes, in response to a policy or practice claim, showing that the agency is being diligent more systemically in the way that it's treating categories of records, then it seems relevant. I mean, I'm listening to what you just read, and I'm thinking, well, that kind of information might have made for a more persuasive declaration on the Bureau's part in response to the policy or practice claim that the channeling of one subset of individual record information has been very smooth and streamlined and other aspects of individual records information not. Do you have an explanation for that? I mean, that seems to me that's the thing that their claim is seeking a reasonable response to. And I'm not sure that the declaration off the file really speaks to that. The Lawyers Committee on Appeal certainly focuses on this channeling argument. That was not the evident focus of the complaint. It was not the evident focus of the briefing in the district court. The complaint is really about meeting the timelines. And so the declaration was responsive to the complaint, and it explained the agency's processing practices. It explained some of the challenges the agency's faced, including the high number of complex requests, the competing demands on staff. It demonstrated that the agency, in fact, meets the statutory timeline for requests on the simple track. The agency explained that BOP FOIA professionals process both more FOIA requests overall than the DOJ average, and that they do more complex requests than the DOJ average. So that, you know, I think is good evidence of due diligence and good faith effort. It also explained the agency's efforts to improve by implementing a robust training program that uses modules developed by the Office of Information Policy, which is kind of DOJ's expert on FOIA. And it said that the Bureau constantly reviews its performance and statistics to look for ways to improve, and that one of these was this centralization light improvement that's described in the declaration. And Mr. Boehm explained that this resulted in 36 percent more requests being processed on a weekly basis. That is a concrete improvement right there and quantified. So, and when you put, the declaration also mentioned the kind of informal practice that was developed during the pandemic of providing expedited access to medical records to facilitate these, you know, requests for compassionate release and home confinement. The Bureau formalized and broadened that in the federal register notice that we pointed to that this court can take judicial notice of. And I think it's just important to look at all of these efforts. None of this is controverted, and none of this resembles the facts of the only other case where this court has recognized a policy and practice claim, which is pain, and nor does it meet the descriptive language that the court used in Judicial Watch in other cases. And if I could just highlight some of that language, Prue 2 referred to rare instances of agency delinquency. Pain described the situation there as a persistent refusal to end a practice for which the agency offers no justification. And Judicial Watch described policy and practice claims as involving abuse of the FOIA scheme, delinquent or recalcitrant conduct, a total disregard of FOIA's requirements. So I don't think in any way does what we have here in the declaration line up with how this court has described the scope of policy and practice claims. I do. I mean, I do want to emphasize that what you pointed to in the Boehm declaration, many of those efforts there, exactly. I think what the sort of systemic due diligence is responsive to that. But I'm not sure that I checked because I wondered about the point that you're making about whether it was clear in the district court that they were really focusing on the sort of, for want of a better shorthand, the channeling point. And I thought they did make that clear. It's mentioned in a page and a half to be sure, but I'd also just like to look at what they mean by channeling. I mean, there is a regulation that has not been challenged that says that agency requests are processed under law, and that means the Privacy Act or FOIA. There is a Privacy Act exemption that has been waived in part, but it's a general exemption for prisoner, like individual prisoner records. And so what that means is that requests by regulation go through FOIA. And I think the argument that a failure to create sufficient processes outside of FOIA, that's just not an argument that the Bureau has a policy and practice of violating FOIA itself. And it boils down to the contention that if an agency can't meet the statutory deadlines, then it can't take advantage of FOIA's exemptions and must simply disclose documents through some other process. I am not aware of any case that provides authority for this proposition. So I had a question that that really helpfully highlights, which is, when you roll back, for example, the prerogative that the Bureau has not to release medical records under the Privacy Act, you say we are going to release those medical records. Are there provisions within the Privacy Act that mirror or are analogous to under FOIA the exemptions such that certain information that would disclose someone else's privacy interest or law enforcement practices or deliberative process that are taken out of something that's released under the Privacy Act? So my understanding of the way the Privacy Act works is that the Act contains certain exemptions that an agency can take advantage of through rulemaking, as the Bureau has done. The Bureau's exemption is set forth in regulation. And that the Privacy Act, this is subsection T, and the interface of these statutes, by the way, is described in OIP guidance that is publicly available. It's called OIP guidance, the guidance explains that under subsection T of the Privacy Act, agencies can't rely on FOIA exemptions to withhold records to which individuals have access under the Privacy Act. So when you submit a Privacy Act request and there's no applicable exemption under the Privacy Act, you can't apply FOIA exemptions. There may be some, my understanding is there could be some redactions for information that's about other people because the Privacy Act gives you information about your own records, but that it's not the same kind of intensive review for multiple exemptions that FOIA has, which is, I think, in large part why the Privacy Act access under this formalized process can operate so much more quickly, because we don't have to have multiple experts looking through the documents doing a painstaking review. And we've cited cases where district courts have held that these central files are often parts or sometimes in whole exempt under FOIA. Exemption 7f is one that's been relied on. So, you know, these are requests that take a long time because they're difficult. These can be requested through the Privacy Act. Those can be thousands of pages long because people may be in prison for a long time. People have a lot of issues in prison. There's a lot of, you know, their whole life is in prison, so there's a lot of things to have records about. So it's not like there's kind of one or two pages when you request these. There can be thousands that have to be reviewed. Mr. Pullum, just to step back, if it seems like in one respect you want us to think about the case that's followed, so I just want to make sure I understand. They're seizing on the fact that you, BOP, withdrew the Privacy Act exemption a little bit to effectively argue BOP needs to process more records under the Privacy Act, but they've offered no legal basis for explaining why that would be. Right. Okay. And then... That's right. There's no Privacy Act claim or claim under any other source of law that would require that process. And if this case were about BOP improperly designating their requests as complex as opposed to simple, we would have expected to see some argument about what goes into making something complex or simple and what the nature of their request is, but that's absent. That's right, and there's no claim that BOP selectively designates their claims as complex but allows other... There are a lot of lawyers that requests for these. There are public defenders all around the country. We don't hear other groups making these same claims, and they have not alleged any specific unfavorable treatment here. So that's right. You quoted page 115 of the Joint Appendix, Uraga, and is it your contention now that the plaintiffs here waived any claim that they're not required to show bad faith in order to get discovered? I just meant to show that they had advocated for the exact standard that we set out in our brief, which... At one point, but you never made that argument in your brief. No, we did not point specifically to... Why shouldn't we say that you waived because you didn't make it in your brief? To the extent that you could say we waived a forfeiture argument. I just think it's relevant to demonstrate that it was common ground in district court and I think underscores the reasonableness of our argument that discovery on these claims is judged by the general standard that applies in all FOIA claims. So I think it's just relevant to underscoring the reasonableness of that argument. And this court in, for example, Judicial Watch applied... Now, that case didn't involve discovery, but it borrowed other general FOIA standards and said they apply in policy and practice claims. So I don't think there's been any kind of special carving out for this nature of claim. Okay. Thanks very much. Thank you. We ask that the judgment be affirmed. Mr. Stafford, do you have time? We used up the time on direct, but you can have a couple minutes of rebuttal. If you have rebuttal, you don't need to use it. Thank you, Your Honor. I'll just make a few quick points. The first point I want to make is that whether the medical individual medical records request are subject to a streamlined FOIA process or a separate Privacy Act waived exemption, in our view, this really doesn't matter. The critical point is that the agency has demonstrated a capability of processing certain individual records requests within the FOIA time limits, and our view is that the agency should have to explain why other individual records requests shouldn't also receive the same treatment. At a minimum, we think that this shows that we should get discovery. A lot of the arguments from my friend on the other side about the Privacy Act, you really won't find them in the BAME Declaration. You won't find a lot of the nuances and the difficulties that they're now saying that they face with these Privacy Act or certain types of medical records. None of that's really explored in the Declaration. I think the fact that we're now reading from internal agency documents that we've never seen about how the agency's looking at classifying certain individual records as simple, we think that also shows that we should, you know, at a minimum, get discovery. With respect to that, I do want to highlight that that has not been my client's experience. The Lawyers' Committee, you know, we've sent dozens and dozens of requests for individual records. Not once have they ever been classified as simple. So, you know, to the extent the agency has this internal decisional framework for classification, it's just not been our experience that it's been applied here. And, you know, finally, I just want to emphasize that, you know, if you affirm here, our main concern is that this is really just going to result in persistent noncompliance and forcing us to file over and over again the individual suits under 552A6C. And we just don't think that Judicial Watch requires that. Judicial Watch specifically says that FOIA requires agencies to approve their record management systems to enable prompt responses without routine judicial involvement. And so, you know, we just don't think that the other side has a viable rule. And so we'd ask that you reverse. Thank you. Thank you. Case is submitted.
judges: Pillard; Garcia; Randolph